# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HUSSEY COPPER, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROYAL INSURANCE COMPANY OF AMERICA, | ) | Lead Case at Civil Action No. 07-758 |
| | ) | |
| | ) | Judge Flowers Conti |
| Defendant. | ) | Magistrate Judge Bissoon |
| | ) | |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HUSSEY COPPER, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Plaintiff's Motion for Partial Summary Judgment based on the doctrine of regulatory estoppel and for reconsideration (Doc. 46) be denied. It is also recommended that the Court's prior grant of summary judgment in favor of Defendants under the "absolute" pollution exclusion be deemed final.

## I. REPORT

**BACKGROUND**

    A.    **General Background/Procedural History**

On July 29, 2008, the District Court granted summary judgment in favor of Defendants on their policies containing the "absolute" pollution exclusion, subject to "further analysis regarding [Plaintiff's claims of] regulatory estoppel." *See* Mem. Order (Doc. 39) at 2, ¶¶ (b), (c). The Court also granted Plaintiff's request to take discovery in support of its regulatory estoppel theory, "but only as related to purported representations [made] to the Pennsylvania Insurance Department" ("the PID"). *Id.* at 3, ¶¶ (e), (g).

Through its adoption of Magistrate Judge Francis X Caiazza's[1] Report and Recommendation dated May 6, 2008 (Doc. 32, "the May 6th R&R"), the District Court contemplated that Plaintiff could take discovery regarding representations made by "[Defendants], their [policy] drafters, or representative organizations." *See* May 6th R&R at 18 & n.10 (rejecting argument that insurers who did not communicate directly with state agency remained unbound by regulatory estoppel, as "they benefitted from the misleading explanation [regarding] the effect of the standard pollution exclusion submitted . . . by insurance industry trade groups") (citing and quoting <u>Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.</u>, 89 F.3d 976, 992 (3d Cir. 1996)). In this case, both Defendants were members of Insurance Services, Inc. ("ISO"), and the Court confirmed that discovery regarding this entity's representations to the PID was appropriate. *See* Minute Entry for Status Conf. held Sept. 17, 2008 (Doc. 41) (rejecting Defendants' contention that Plaintiff was entitled to discovery

---

[1] This case was referred to the undersigned on August 1, 2008, upon Judge Caiazza's retirement from the Bench.

regarding only those representations made directly by them to PID, and confirming that ISO's representations were potentially relevant to regulatory estoppel).

Plaintiff has taken its discovery, and the regulatory estoppel issue is now ripe for adjudication.

B. **Regulatory History**[2]

On January 7, 1985, ISO submitted for the PID's approval a pollution exclusion endorsement including the following language:

> (1) [this pollution exclusion extends] to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
>
> (a) at or from the premises owned, rented or occupied by the named insured;
>
> (b) at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste;
>
> (c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or
>
> (d) at or from any site or location on which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations:
>
> > (i) if the pollutants are brought on or to the site or location by or for the named insured in connection with such operations; or

---

[2] Unless otherwise noted, the Court will rely on Plaintiff's recitation of the regulatory history because, even accepting its factual averments and characterizations as true, Plaintiff is not entitled to summary judgment. *See generally* discussions *infra*.

3

>             (ii)    if the operations are to test for, monitor,
>                     clean up, remove, contain, treat, detoxify or
>                     neutralize the pollutants.
>
>     (2)     to any loss, cost or expense arising out of any governmental
>             direction or request that the <u>named insured</u> test for,
>             monitor, clean up, remove, contain, treat, detoxify or
>             neutralize pollutants.

*See* Doc. 46-3 at pg. 21 of 44 (emphasis in original, other original emphases omitted).

Although Plaintiff suggests that this proposal was "substantially similar to the 'absolute' pollution exclusion[s]" found in Defendants' policies, *see* Pl.'s Facts (Doc. 48) at ¶ 4, Section (2) of Defendants' exclusions were broader. Specifically, Defendants' Section (2) extended to any "[r]equest, demand, or order that [the] insured <u>or others</u> test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants"; and any "[c]laim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants." *See* May 6th R&R at 5 (citing and quoting record evidence) (emphasis added).

ISO's explanatory memorandum, submitted in support of the narrower exclusion, stated:

> This endorsement introduces a total pollution exclusion for bodily
> injury and property damage arising from the discharge of
> pollutants. The exclusion does not apply to damages arising out of
> products or completed operations nor to certain off-premises
> discharges of pollutants. Clean-up costs are specifically excluded
> as a clarification of current intent.

Doc. 46-3 at pg. 16 of 44.

In response to ISO's submission, the PID wrote:

> It is not clear how the exclusion operates to not to [sic] apply to damages arising out of product or completed operations. We feel that some clarifying language would be helpful.

Doc. 46-3 at pg. 18 of 44.

By way of background, commercial general liability ("CGL") policies commonly recognize a type of coverage, subject to specified restrictions, for "[p]roduct-completed operations hazard." *See* Royal's Policy (filed under Doc. 15-6) at ¶ 4(14)(a); *see also* Federal's Policy (filed under Doc. 17-9 at pg. 26 of 63) (containing materially identical provisions). The product-completed operations hazard "include[s] all bodily injury and property damage occurring away from [the insured's] premises . . . arising out of [its] product," so long as the product is no longer "in [the insured's] physical possession." *Id.* (internal quotations omitted). It is beyond reasoned debate that the PID's inquiry regarding "damages arising out of product or completed operations" referred to this type of coverage. *See generally* discussion *supra*.

In response to the PID's inquiry, ISO stated:

> Although the revised pollution exclusion does not explicitly except products and completed operations, pollution liability coverage for products and completed operations is afforded when the exclusion is used. . . .
>
> According to the 'products hazard' definition, bodily injury or property damage arising out of the named insured's products is included within the products hazard if the injury or damage occurs away from the named insured's premises and if the named insured has relinquished possession of the product. . . .

Doc. 46-3 at pg. 32-44.

ISO's response further explained, as follows, the interplay between "products-completed" coverage and the specific provisions of the proposed pollution exclusion:

5

> [Section] (1)(a) pertains to pollution emissions at or from the named insured's premises; injury and damage from products, as defined, occur away from the named insured's premises and after physical possession of such products has been relinquished to others. Since the pollution exclusion applies to emissions on or from the insured's premises, possession is not considered as being relinquished . . . .
>
> [Sections] (1)(b) and (c) exclude pollution liability coverage for discharges relating to the handling and transportation of waste. . . . These provisions do not apply to products or completed operations [because] waste is not intended to be considered as [part of] the . . . insured's product[] . . . .
>
> [Section] (1)(d) refers to the off-premises discharges, but applies only when the named insured or any contractors or subcontractors 'are performing operations . . .'. Since the operations must be in progress, this part of the exclusion does not apply to completed . . . products.
>
> [Section] (2) specifically excludes clean-up costs and, therefore, does not have any application to products or completed operations.

*Id.* at pgs. 32-33 of 44 (emphasis added, some internal quotations and emphasis omitted).

As just seen, ISO paid short shrift to the cleanup costs referenced in Section (2), summarily concluding that they had no application for the purposes of products or completed operations. *See* discussion immediately *supra*. While the Court cannot say with certainty why this was the case, it may be inferred that cleanup costs were presumed unavailable given the language presented in Section (2) at that time. Specifically, the exclusion extended only to losses arising out of "any governmental direction or request that the named insured" clean up or otherwise remediate pollutants. *See id.* (emphasis added). Given that "products-completed" coverage, by definition, extended only to damages sustained away from the insured's premises, there was little reason for ISO or the PID to contemplate Section (2)'s application to a products-completed claim.

6

Later in 1985, the PID approved ISO's pollution exclusion endorsement, *see* Pl.'s Facts at ¶ 9, and, in support of unrelated amendments proposed in 1986, ISO stated:

> [The] exclusion applies, without distinction between sudden and gradual emissions, to pollution emanating from the insured's premises or a waste disposal or treatment facility. Also, clean-up costs are specifically excluded. With the new exclusion, coverage is limited to certain off-premises emissions, including the products/completed operations exposure.

Doc. 46-3 at pgs. 40-41 (stating same in support of amendment regarding damages resulting from "a hostile fire").

Plaintiff also cites ISO's 1989 submission of a proposed "total" (as opposed to "absolute") pollution exclusion, with the explanatory comment:

> [T]he total pollution exclusion . . . [is] for potential use – on a limited but critically important basis – by certain insureds who might not be able to obtain all of the other CGL coverages because the pollution coverage provided within basic contact [sic] is inappropriate for their particular risk situation. This is done by deleting the products/completed operations and other off premises pollutions coverage that would otherwise remain with the basic CGL exclusion.

Doc. 46-4 at pg. 5 of 37.

Finally, Plaintiff highlights statements made by ISO in 1998 regarding proposed changes to the absolute pollution exclusion:

> Paragraph (2) has been revised to add an exception to clarify that this paragraph is not intended to exclude coverage for property damage claims which are otherwise covered and are not subject to paragraph (1) of the exclusion. For example, if property damage is covered, that coverage is not excluded by paragraph (2). Revised paragraph (2) excludes coverage for:
>
> (2)  Any loss, cost or expense arising out of any:

7

> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or
>
> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.
>
> <u>However, this paragraph does not apply to liability for damages because of property damage that the insured would have in the absence of such request, demand or statutory or regulatory requirement or such claim or suit by or on behalf or [sic] a governmental authority</u>.

Doc. 64-5 at pg. 13 of 47 (internal quotations omitted, underlined portions reflecting changes in ISO's proposed amendment).

If these amendments look familiar, this is so because they are materially identical to the ones found in Federal's "modified" pollution exclusion. *See* May 6th R&R at 9 (quoting same). It remains beyond dispute, however, that the additional language above was <u>not</u> contained in Defendants' absolute pollution exclusions.

**<u>ANALYSIS</u>**

Plaintiff's regulatory estoppel theory is premised on the notion that ISO, on behalf of Defendants, represented that the subject pollution exclusions "[did] not apply to damages arising from products, even when those damages include clean-up costs." *See* Pl.'s Br. (Doc. 47) at 10. The undersigned disagrees.[3]

---

[3] The conclusion that ISO's representations to the PID do not support Plaintiff's claims for regulatory estoppel renders moot Defendants' arguments that they were not legally bound by ISO's representations. *Cf.* Royal's Br. in Opp'n to Pl.'s Mot. for Summ. J. on Regulatory

On more than one occasion, ISO stated to the PID that cleanup costs were "specifically excluded." *See* ISO's Jan. 7, 1985 explanatory mem.; ISO's response to PID inquiry of Jan. 29, 1985 ("[Section] (2) specifically excludes clean-up costs and, therefore, does not have any application to products or completed operations"); ISO's 1986 explanatory cmt. ("clean up costs are specifically excluded"); *cf. also* ISO's 1998 statement to PID (under 1998 "<u>revis[ion]</u>" "<u>add[ing] an exception</u>" to pollution exclusion, property damage otherwise covered "is not excluded by [P]aragraph (2)") (emphasis added) (all sources quoted *supra*). Although the Court may speculate that the "cleanup" exception initially was founded in previous policy language, which limited Paragraph (2) to remediation by the named insured, there is no basis to conclude that ISO intended to or did deceive the PID in any way.

Nor is there record evidence addressing how or when ISO (or Defendants) subsequently expanded the scope of Paragraph (2) to include demands placed on "others" to remediate pollution, and added a provision (Paragraph (2)(b)) unqualifiedly extending the exclusion to "[c]laim[s] or suit[s] by or on behalf of a governmental authority." *See* discussion *supra*. Even attaching the most nefarious intent to Defendants (which the undersigned has no reason to do), at best the Court may suppose that the more expansive provisions contained in the policies in suit "slipped by" the PID. Irrespective of how the broader language found its way into the policies, there is no evidence that ISO misled the PID.

The only ISO representations that did not include the "no cleanup" caveat came in 1989 and 1998. *See* discussions *supra*. These statements were made in connection with amendments to the pollution exclusion that undisputedly do not appear in Defendants' policies. *See id.* (ISO's 1989 submission was made in connection with "total" pollution exclusion,

---

Estoppel (Doc. 51) at 5-6 *and* Federal's Br. in Opp'n to Pl.'s Mot. for Summ. J. on Regulatory Estoppel (Doc. 49-4) at 6-13 (arguing same).

and 1998 submission related to amendments materially similar to Federal's "modified" pollution exclusion). In any event, ISO's representations were consistent with the distinction drawn in its 1998 amendment (and Federal's "modified" pollution exclusion):

> [P]aragraph [(2)] does not apply to liability for damages because of property damage that the insured would have <u>in the absence of such request, demand or statutory or regulatory requirement or such claim or suit by or on behalf o[f] a governmental authority</u>.

*See* discussion *supra* (quoting ISO's proposed 1998 amendment) (emphasis added).

Assuming *arguendo* that regulatory estoppel can be established based on statements purporting to interpret insurance provisions not contained in the policies in suit, at best, Plaintiff may argue that Defendants should be estopped from denying coverage for property damage suffered in the absence of a government-mandated cleanup. *See generally* discussions *supra*. The problem for Plaintiff, however, is its inability to demonstrate that Defendants have taken an "opposite" position before this Court.

Even under the most liberal reading of the regulatory estoppel doctrine, Plaintiff is required to show that: (1) Defendants (in this case, through ISO) made a statement to a regulatory agency; and (2) Defendants have taken a position in this litigation "opposite" the one presented to the regulatory agency. Simon Wrecking Co., Inc. v. AIU Ins. Co., 541 F. Supp.2d 714, 717 (E.D. Pa. 2008); *accord* Sunbeam Corp. v. Liberty Mut. Ins. Co., 781 A.2d 1189, 1192 (Pa. 2001) (regulatory estoppel "protect[s] the integrity of the courts by preventing litigants from playing fast and loose with the judicial system") (citation and internal quotations omitted). In this case, Defendants have consistently maintained that all of Plaintiff's damages flow from a government-mandated cleanup. *See, e.g.*, Royal's Summ. J. Br. (Doc. 15-3) at 16 (in Kane suit, Plaintiff seeks costs "arising out of the demand to respond to the lead contamination on or near

10

the Judicial Center property") (internal quotations in this and subsequent citations omitted);[4]
Royal's Br. in Opp'n (Doc. 28) to Pl.'s Mot. for Partial Summ. J. at ¶ 8 (Kane "plainly demands payment of the costs of cleaning up pollutants"); Royal's Reply in Supp. of Summ. J. (Doc. 27) at 11 (Kane "actually [seeks]" compensation for "expensive remedial measures"); Royal's Br. in Opp'n to Pl.'s Mot. for Summ. J. on Regulatory Estoppel at 2 ("Royal has argued that the only claims for which coverage is sought . . . are claims for reimbursement of clean up costs"); *see also, e.g.*, Federal's Summ. J. Br. (Doc. 17-3) at 3 ("the Kane [s]uit is all about pollution-related damages in response to . . . state regulatory efforts"); Federal's Br. in Opp'n (Doc. 29) to Pl.'s Mot. for Partial Summ. J. at ¶ 3 ("[w]here . . . pollution-related damages arise out of a . . . governmental [demand] for cleanup," "they are plainly barred from coverage"); Federal's Reply in Supp. of Summ. J. (Doc. 30) at 5 ("[w]here, as here, liability is wholly dependent upon and directly arises from a request to remedy environmental pollution, the exception to the exclusion does not apply"); Federal's Br. in Opp'n to Pl.'s Mot. for Summ. J. on Regulatory Estoppel at 17 ("the gravamen of the Kane [s]uit is the pollution-related damages generated in response to . . . state regulatory efforts").[5]

---

[4] As discussed in the May 6th R&R, this action addressed two underlying cases, the Kane suit and the Peoples suit. *See id.* at 2-3. For the purposes of regulatory estoppel, Plaintiff appears to have abandoned its claims for coverage in Peoples. *See generally* Pl.'s Br. (failing to address same). In any event, the analyses herein apply with equal force to both underlying cases.

[5] To be sure, Federal, to some degree, has relied on longstanding Pennsylvania law holding that "the absolute pollution exclusion bars coverage for clean up costs, diminution of property value," "the cost of environmental consultants," and "attorneys' fees." *See* Federal's Summ. J. Br. at 10, 12. Federal's citation to well established law regarding the great breadth of the absolute pollution exclusion, however, is a far cry from taking a position "opposite" to ISO's statements regarding whether the pollution exclusion may provide coverage "in the absence of [a governmental] request[ or] demand" for cleanup. *See* discussions *supra*; *see also* Federal's Summ. J. Br. at 15 (conceding that, under Federal's "modified" pollution exclusion, coverage may exist for claims "made by a third party for property damage not directly resulting from" governmentally mandated cleanup) (emphasis in original).

Under the circumstances, Plaintiff has failed as a matter of law to demonstrate that Defendants (through ISO or otherwise) made statements to the PID and then "took a position [before this Court] opposite to the one presented to the regulatory agency." *See* discussions *supra*. In sum, ISO repeatedly told the PID that "cleanup" costs were not covered under Paragraph (2) of the pollution exclusion. Any subsequent statements to the PID, made in connection with proposed amendments not appearing in Defendants' policies, can be read consistently with the positions taken by Defense counsel in this litigation.[6]

The unavailability of regulatory estoppel here is further supported by an examination of the cases applying it. In <u>Sunbeam</u>, the Pennsylvania Supreme Court allowed the insureds to survive the state-court equivalent of Rule 12(b)(6) because they claimed that the insurers submitted to the PID a memorandum asserting "that the disputed language -- excluding coverage for pollution unless it was 'sudden and accidental' -- would not result in any significant decrease in coverage." *Id.*, 781 A.2d 1189, 1192 (Pa. 2001); *see also id.* at 1191-92 (indicating that dispute centered on whether "sudden and accidental" was legally equivalent to prior policy language, "unexpected and unintended").

Unlike <u>Sunbeam</u>, regulatory estoppel in this case is addressed on summary judgment, after discovery on the issue. In <u>Sunbeam</u>, moreover, the purported inconsistencies between statements made to the PID and the court were clear, and they did not require broad inferential leaps, as does Plaintiff's theory in this case. Most significantly, the repeated invocation of regulatory estoppel within the context of the "sudden/accidental" versus "unexpected/

---

[6] The undersigned's analyses regarding regulatory estoppel are in no way inconsistent with the District Court's denial of summary judgment under Federal's modified pollution exclusion. *See* Mem. Order dated Jul 29, 2008 at 2 ¶ (d). That ruling was based on the specific language contained in Federal's modified exclusion, not regulatory estoppel, and the Court's conclusion that property damage potentially existed outside the scope of the government-mandated cleanup was based on its own reasoning, not Federal's. *See* May 6th R&R at 9-13.

unintended" analysis arguably says more about the subject matter of that dispute than it does regarding the application of regulatory estoppel generally. *See, e.g.*, Essex Chem. Corp. v. Hartford Accid.& Indemn. Co., 1995 WL 861533, *2 (D. N.J. Dec. 15, 1995) (relying on New Jersey Supreme Court's conclusions that: insurance industry changed unexpected/ unintended language to sudden/accidental with purpose of "materially and dramatically reduc[ing] pollution insurance coverage for all insureds"; industry "purpose[ly] . . . misl[ed]" regulators by suggesting that new language was intended merely "to permit underwriters to perform their traditional function" of precluding coverage for insureds who "knowingly pollut[e]"; and regulatory estoppel "bound the industry to [its] original stated purpose") (citations and internal quotations omitted). Given that regulatory estoppel has nearly always been applied within the context of the sudden/accidental provision, a "clause . . . of nationwide application [that] has been subject to interpretation in many, if not all states," the Pennsylvania Supreme Court's decision in Sunbeam should be read in context. *See* Essex at *2 (concluding that New Jersey's application of regulatory estoppel "promote[d] a harmonious result" regarding interpretation of sudden/accidental provision).

Outside the context of the "sudden/accidental" analysis, Plaintiff here attempts to invoke regulatory estoppel to override long-standing interpretations of the "absolute" pollution exclusion, a provision that has been "interpreted broadly to excuse . . . indemnif[ication] for any damages resulting from the discharge of [pollutants]. . . . irrespective of the role . . . the insured is alleged to have played." *See* May 6th R&R at 6 (citation to quoted source omitted). The undersigned cannot imagine that the Sunbeam Court meant to open the door to regulatory estoppel challenges like the one in this case, especially given Plaintiffs' lack of evidence regarding inconsistent statements. *Cf. id.* at 14 n.6 (noting that Plaintiff's related "custom and

13

usage" theory "[a]s a practical matter . . . would require the District Court to turn its back on the oft-litigated and firmly established Pennsylvania law regarding the breadth and enforceability of the absolute pollution exclusion. Affixing [a different] meaning to its terms would call this entire area of the law into question, and the undersigned does not believe the Sunbeam Court meant to invite such dramatic and indiscriminate sea changes in the law.").

For all of these reasons, Plaintiff's Motion for Partial Summary Judgment based on regulatory estoppel should be denied. So too should its request for reconsideration of the District Court's finding of unambiguity. See Pl.'s Br. at 18-20.

In its previous decision, the Court rejected Plaintiff's ambiguity arguments:

> The language of the [absolute p]ollution [e]xclusion is unambiguous . . . . [Plaintiff]'s counsel argues, without citation to legal authority, that certain terms of the pollution exclusion are ambiguous, and the provisions were not intended to apply to the type of third-party damages caused by the insured's products after that product has been sold or put to use. . . . These interpretations are supported by neither the policy language nor the law, and the absolute pollution exclusion precludes coverage for the reasons stated in . . . [the] sources [referenced herein].

May 6th R&R at 6 (citations and internal quotations omitted).

The Court's prior ruling is the "law of the case," and reconsideration is appropriate only upon a demonstration of "extraordinary circumstances." See Bennett v. City of Phila., 2004 WL 187408, *1 (E.D. Pa. Jan. 26, 2004) (citation to quoted source omitted). Reconsideration is restricted to situations where: "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." Id.

There has been no "supervening new law," and the earlier decision was neither clearly erroneous nor did it create manifest injustice. And although Plaintiff has introduced

14

"new evidence" in connection with its regulatory estoppel theory, nothing in its submissions causes the undersigned to question the Pennsylvania courts' longstanding recognition that the absolute pollution exclusion is unambiguous. *See* discussion *supra*. Defendants' purported inconsistent statements to the PID relate exclusively to the absolute pollution exclusion in this case, and any attacks based on regulatory estoppel are appropriately framed under that doctrine as opposed to claims of ambiguity regarding a provision found by the courts, time and again, to be unambiguous.

Even assuming Plaintiff's arguments properly may be framed in terms of ambiguity, the undersigned already has concluded above that ISO's representations to the PID were consistent with Defendants' positions here. *See* discussions *supra*. Those positions include Defendants' assertion that the relevant provisions of the absolute pollution exclusion are unambiguous and bar property damages flowing from a government-mandated cleanup.

Finally, reconsideration is particularly inappropriate under the circumstances presented here. Plaintiff first raised regulatory estoppel in conjunction with its opposition to Defendants' Motions for Summary Judgment. Over Defendants' objection, and despite Judge Caiazza's conclusion that Plaintiff "arguably could have raised the estoppel issue sooner," the Court found "a complete rejection of the [regulatory estoppel] theory too harsh a [sanction]" for Plaintiff's prior omission. *See* May 6th R&R at 15-16.

As a result, for nearly seven months the parties have traversed a "side road" to explore whether Plaintiff could present viable claims of regulatory estoppel. *See* Dist. Ct.'s Mem. Order (entered Jul. 29, 2008) *and* Pl.'s Mot. For Leave to file Reply Briefs (Doc. 55) (filed on Feb. 19, 2009). The undersigned has determined that Plaintiff cannot, and it would be entirely inappropriate to allow Plaintiff to re-open its claims of purported ambiguity. Although the Court

15

felt "constrained" by Sunbeam to allow Plaintiff to investigate the regulatory estoppel theory, by no means did it anticipate revisiting the other issues carefully considered and decided through the previous summary judgment motions.

The law of the case doctrine "is designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity." St. Thomas-St. John Hotel & Tourism Ass'n Inc. v. Virgin Islands Dept. of Labor, 357 F.3d 297, 301 (3d Cir. 2004) (citation to quoted source omitted, emphasis added). Its application is warranted in this case, and Plaintiff's request for reconsideration should be denied.

**CONCLUSION**

Plaintiff's Motion for Partial Summary Judgment and for reconsideration (Doc. 46) should be denied, and the Court's entry of summary judgment in favor of Defendants under the "absolute" pollution exclusion should be deemed final.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by June 22, 2009. Responses to objections are due by July 6, 2009.

June 3, 2009
s\Cathy Bissoon
Cathy Bissoon
United States Magistrate Judge

cc (via email):

Kimberly A. Brown , Esq.
William M. Wycoff, Esq.
Leon B. Kellner, Esq.
Selena J. Linde, Esq.
Ralph J. Luongo, Esq.
William P. Shelley, Esq.